```
               UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT

Peter Goodnow,                  :
      Plaintiff,                :
                                :
      v.                        :    File No. 1:06-CV-124
                                :
Rob Hofmann, Prisoner           :
Health Services, Tanya          :
Lock, Dr. Pamela Pedersen,      :
Dr. Sonali Patel and            :
Stuart Gladding,                :
      Defendants.               :
```

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 58)

The defendants have moved for summary judgment claiming that this case has been settled and that, pursuant to a jointly-filed stipulation of dismissal, all claims have been dismissed.  Plaintiff Peter Goodnow, proceeding *pro se*, contends that he was not aware that all defendants were being dismissed, and that he hopes to proceed with his claims against defendants Pedersen and Patel.  In support of the motion for summary judgment, the defendants have submitted a General Release showing that Goodnow released all claims against Drs. Pedersen and Patel.  In light of the release, I recommend that the defendants' motion (Paper 58) be GRANTED and this case be DISMISSED.

Factual Background

Goodnow initiated this case on June 27, 2006.  At the

time, he was incarcerated in a Vermont prison.  His complaint alleged that he was receiving inadequate medical care for a broken hand and a painful tooth.  He later informed the Court that he was also having pain in his jaw, that his neck was swollen and that he could not open his mouth.

Goodnow's claims against Dr. Pedersen and Dr. Patel pertained to the jaw issue.  On December 8, 2006, he filed a motion for emergency injunctive relief asking for additional treatment by a specialist.  In response, Drs. Pedersen and Patel submitted affidavits stating that they had treated Goodnow over the previous several months and that they did not believe he required a specialist.

On March 22, 2007, I issued a Report and Recommendation in which I recommended that the Court dismiss some claims and allow Goodnow leave to amend others.  I also recommended that the motion for a preliminary injunction be denied, but permitted Goodnow to amend his complaint to add Pedersen and Patel as parties.  (Paper 37).  The Report and Recommendation was never ruled upon by the Court.

On June 1, 2007, the Court granted a motion to stay the case due to Goodnow's poor health.  On June 7, 2007, the

Court received a proposed order of dismissal from the parties.  The text of the order stated, in full: "Now come the parties to this action, by and through counsel of record, and stipulate and agree that this case may be DISMISSED WITH PREJUDICE."  The caption on the order did not include the recently-added Pedersen and Patel.  The Court entered the order on July 6, 2007.

On August 20, 2007, Goodnow moved for appointment of counsel and informed the Court that he wished to proceed against Pedersen and Patel.  On September 26, 2007, the defendants moved for summary judgment, arguing that all claims had been released.  In support of their motion, the defendants filed a General Release signed by Goodnow on June 1, 2007.  The General Release states that, in exchange for a cash settlement, Goodnow released all claims against "Prison Health Services, Vermont Department of Corrections, Robert Hoffman, Tonya Lock, Dr. Pamela Pedersen, Dr. Sonali Patel . . . ."  (Paper 58-2 at 1).  The names of all parties to the General Release, including Pedersen and Patel, are set forth in the text of the document in bold type.  Id.

Goodnow's initial response to the motion for summary judgment argues that his claims against Pedersen and Patel

3

have merit, and that these defendants lied in their affidavits to the Court in response to his motion for injunctive relief.  (Paper 63).  In his second response, Goodnow contends that the papers he signed listed only "Prison Health Services," presumably referring to the stipulation of dismissal.  As to the General Release, Goodnow claims that he has been very sick and that he "could not clearly read or understand the added pages of Attorney [Hoar's] release.  I simply saw 'Prison Health Services' and was glad to release them.  At no time did I wish to release Dr. Pedersen or Sonali [Patel]."  (Paper 64 at 1-2).

## Discussion

Goodnow brought his claims under 42 U.S.C. § 1983. While federal law governs the validity of releases of federal causes of action, the Second Circuit has held that federal courts should "look to state law to provide the content of federal law."  <u>Olin v. Consolidated Aluminum Corp.</u>, 5 F.3d 10, 15 (2d Cir. 1993) (citing <u>Commander Oil Corp. v. Advance Food Serv. Equip</u>, 991 F.2d 49, 51 (1993)). In Vermont, a release is a contract.  <u>Economou v. Economou</u>, 136 Vt. 611, 619 (1979).  As such, it may only be avoided in a narrow set of circumstances.

Once such circumstance is a mistake of fact, but the mistake must be mutual. "Without a mutual mistake of fact 'one of the parties can no more rescind the contract without the other's express consent or implied assent, than he alone could have made it.'" Maglin v. Tschanneri, 174 Vt. 39, 44-45 (2002) (quoting Enequist v. Bemis, 115 Vt. 209, 212 (1947)). Goodnow claims that he was unaware of the fact that certain defendants were being released. The terms of the General Release, however, are clear, and the defendants were clearly not operating under this same mistake of fact. Therefore, Goodnow's mistake does not relieve him of the terms of the release.

Goodnow claims that he signed the release without being able to "clearly read or understand" its terms. While the Court acknowledges that Goodnow was ill and under medication, the basic terms of the release were quite plain. The document is entitled "General Release" and the names of the releasor and all releasees are set forth in bold type. Even if Goodnow was not able to fully comprehend some of the terms in the release, the fact that he was releasing Dr. Pedersen and Dr. Patel should have been obvious. Absent any claim of fraud or intentional misrepresentation, the Court

5

should not excuse the release as not having been knowingly executed.  See, e.g., Bristow v. Ameriquest Mortgage Co., 2007 WL 2461935, at *2 (Aug. 27, 2007) (citing Michigan law).

Vermont courts have also recognized that an inequality in bargaining power may nullify a contract.  In order to avoid a release, the inequality must be accompanied by "an element of oppression."  Maglin, 174 Vt. at 45.  "[W]e are primarily concerned with unequal bargaining power when the differential is used to coerce the less powerful party into agreement because that party has no other meaningful choice."  Id.  Although Goodnow has not asserted this specific argument, the Court may imply from his pro se status and his poor health that he may have perceived an inequality in bargaining power.  Nonetheless, there is no suggestion that he was oppressed or coerced, or that the outcome of the settlement was in any way unfair.

Goodnow knew that Prison Health Services was being released and that all claims against it were being settled.  He does not claim that he was not of sound mind when he executed the release of Prison Health Services.  Instead, he appears to blame his illness and medication for the fact

6

that he overlooked the remaining releasees in the General Release.  "'A person who, without coercion or undue persuasion, executes a solemn release cannot subsequently impeach it on the grounds of his own carelessness.'" Maglin, 174 Vt. at 46 (quoting Morta v. Korea Ins. Corp., 840 F.2d 1452, 1458 (9th Cir. 1988)).  While Goodnow may have been sick, it appears from his claims that he read parts of the documents presented to him and did not read or understand other parts.  He nonetheless signed both the stipulation of dismissal and the General Release.  Because he has failed to allege facts sufficient to relieve him of the General Release, he should now be bound by its terms and this case should be dismissed.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 58) be GRANTED and that this case be DISMISSED with prejudice.

Dated at Burlington, in the District of Vermont, this 23rd day of October, 2007.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).